UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
                                                            :        **MEMORANDUM & ORDER**
         v.                                                 :        20-CR-293 (WFK)
                                                            :
OLUWAGBENGA AGORO,                                          :
                                                            :
                    Defendant.                              :
------------------------------------------------------------X

------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
                                                            :        **MEMORANDUM & ORDER**
         v.                                                 :        21-CR-166 (WFK)
                                                            :
OLUWAGBENGA AGORO,                                          :
                                                            :
                    Defendant.                              :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On November 18, 2022, Defendant was convicted by a jury on ten counts of a 20-count Superseding Indictment in 20-CR-293,[1] specifically: Count 10, conspiracy to murder rival gang members, in violation of New York Penal Law ("NYPL") §§ 125.25(1) and 105.15 and 18 U.S.C. §§ 1959(a)(5) and 2; Counts 12 and 17, attempted assault with a dangerous weapon in-aid-of racketeering, in violation of NYPL §§ 120.05(2), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; Counts 13, 16, and 18, attempted murder in-aid-of racketeering, in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2; Counts 14 and 19, assault with a dangerous weapon in-aid-of racketeering, in violation of NYPL §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(3) and 2; and Counts 15 and 20, possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2. Jury Verdict, ECF No. 533; *see also* Superseding Indictment, ECF No. 51. That same jury further convicted Defendant on Count 1 of the Indictment in 21-CR-166, charging threatening physical violence in furtherance of a plan to commit extortion, in violation of 18 U.S.C. §§ 1951(a) and 2. ECF No. 533; *see also* ECF No. 1, 21-CR-166. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced

---

[1] All docket citations and references to "Counts" of conviction are to 20-CR-293 unless otherwise stated.

to 360 months of imprisonment, to be followed by three years of supervised release with special conditions. Defendant is required to pay a mandatory special assessment of $1,100.00.

## I. Background

The Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") led the investigation into Defendant and other gang associates and members for the instant offense. Presentence Investigation Report ("PSR") ¶ 14, ECF No. 590. Defendant is a member of the Folk Nation Gangster Disciples ("GD"), a violent street gang operating out of Brooklyn, New York. *Id.* ¶¶ 14, 15. Central to GD's tenets is the use of violence to retaliate against perceived slights to the gang or to enhance the status of members within the gang. *Id.* ¶ 14. One of GD's Brooklyn-based sets, or neighborhood-based subgroups, is the No Love City ("NLC") set, which is based mainly around Newkirk and Flatbush Avenues. *Id.*

In November of 2020, Defendant, along with others, participated in shootings targeting rival gang members. *Id.* ¶ 16. The first two shootings, both of which were carefully orchestrated drive-by shootings, took place in Canarsie, Brooklyn on November 7, 2020. *Id.* ¶ 24. GD arranged to have three cars participate in the shooting: one to carry the shooters, and two to act as strategic decoys. *Id.* ¶ 25. Decoys were employed to slow down the police or draw their attention away from the shooters in the event police interfered and sought to protect human life. *Id.* The convoy drove from Flatbush, Brooklyn, which is NLC territory, to Canarsie, Brooklyn, which is rival gang territory. *Id.* Upon arrival in Canarsie, the convoy drove past a crowd of people and at least two occupants of the shooter car opened fire. *Id.* No one was injured in this shooting. *Id.* Later that same day, the convoy returned to Canarsie and at least three individuals in the shooter car again opened fire into a crowd of people, non-fatally wounding two of those people. *Id.* ¶ 26. For both shootings, Defendant was driving a decoy car. *See id.* ¶¶ 25-26.

2

During the evening of November 8, 2020, co-defendant Destine messaged Defendant and, using gang slang, ordered Defendant to recruit two people for a shooting. *Id.* ¶ 28. Defendant responded the following morning, using gang slang to tell co-defendant Destine this time, he wanted to be in the shooter car rather than a decoy car. *Id.* ¶ 29.

The second two shootings took place on November 9, 2020. PSR ¶¶ 29-31. That day, Defendant and others set out in another three-car convoy comprised of a shooter car and two decoys. *Id.* ¶ 29. The convoy drove to rival gang territory in Prospect Park South, Brooklyn, and circled a group of men twice before stopping. *Id.* ¶ 31. Defendant and co-defendant Thompson exited the shooter car and opened fire at the group. *Id.* No one was injured in this shooting. *Id.* The second November 9, 2020 shooting took place in Brownsville, Brooklyn, where a two-car convoy of GD members and associates shot into a crowd of people, striking one woman. *Id.* ¶ 32. Defendant was in the shooter car. *Id.*

On March 14, 2021, Defendant extorted a bodega employee in Flatbush, Brooklyn. *Id.* ¶ 33. Defendant told the employee: (1) the bodega was part of Defendant's territory; (2) the employee had no right to stop Defendant's associates from taking things from the bodega without full payment; (3) to empty his pockets; and (4) when Defendant came back to the bodega in the future, the employee would pay for whatever Defendant took. *Id.* Defendant brandished a firearm to induce the employee to empty his pockets. *Id.* Police officers arrested Defendant after he fled from the bodega. *Id.* ¶ 34. After waiving his *Miranda* rights, Defendant acknowledged he was in the bodega and spoke with the employee, but denied threatening the employee. *Id.*

On March 26, 2021, a grand jury returned a two-count Indictment in 21-CR-166, charging Defendant with one count of threatening physical violence in furtherance of a plan to

extort, in violation of 18 U.S.C. §§ 1951(a) and 2, and one count of possessing and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(ii) and 2.  21-CR-166 Indictment, ECF No. 1.[2]  The Indictment contains forfeiture allegations as to both counts.  *Id.* ¶¶ 3-6.

On August 4, 2021, a grand jury returned a twenty-count Superseding Indictment in 20-CR-293, which alleges Defendant was a member of GD.  Superseding Indictment ¶¶ 1, 8.  According to the Superseding Indictment, GD is an "enterprise" as defined by 18 U.S.C. § 1959(b)(2) that engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(l) and 1961(1).  *Id.* ¶¶ 4-5.

Defendant was charged with 11 counts in the Superseding Indictment:  Count 10 charges Defendant with conspiracy to murder rival gang members, in violation of NYPL §§ 125.25(1) and 105.15 and 18 U.S.C. §§ 1959(a)(5) and 2; Counts 11, 13, 16, and 18 charge Defendant with attempted murder in-aid-of racketeering, in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2; Counts 12 and 17 charge Defendant with attempted assault in-aid-of racketeering, in violation of NYPL §§ 120.05(2), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; Counts 14 and 19 charge Defendant with assault in-aid-of racketeering, in violation of New York Penal Law §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(3) and 2; and Counts 15 and 20 charge Defendant with possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(l)(A)(i)-(iii) and 2.  Superseding Indictment ¶¶ 24-43.  The Superseding Indictment also contains a criminal forfeiture allegation as to all counts.  *Id.* ¶¶ 44-45.

---

[2] The Government dismissed Count 2 of the Indictment in 21-CR-166 during trial.  Tr. 254.

On November 18, 2022, Defendant was convicted on all his charged counts in both dockets, except for Count 11. *See* Jury Verdict.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

5

1.       Family and Personal Background

Defendant was born on January 27, 2000 in Brooklyn, New York to the marital union of Kayobe Agoro and Yetunde Henry.  PSR ¶ 117.  Defendant's parents separated in approximately 2015 as a result of Defendant's father's struggles with anger management and abusive behavior toward Defendant's mother.  *Id.* ¶ 117.  Defendant later learned his father went to prison, Defense Memorandum ("Def. Mem.") at 4, ECF No. 692, and Defendant has not spoken with his father since 2015, PSR ¶ 117.  Defendant's mother is aware of the instant offense and remains supportive.  *Id.*  Defendant has two siblings, each of whom is aware of the instant case and remain supportive of Defendant.  PSR ¶ 119.

Defendant had a difficult childhood.  Defendant's father would physically abuse Defendant's mother when he failed to take his medication and lost his temper.  *Id.* ¶ 120. Defendant reported that when he was approximately three-years-old, the New York City Administration for Children's Services removed Defendant and his brother from their home due to his parents' relationship; they were returned to Defendant's parents after less than a year.  Def. Mem. at 2-3.  Defendant and his mother were evicted from their home after his parents separated in 2015, and they lived in a Queens shelter from approximately 2016 to 2019.  PSR ¶ 120.

Defendant has never been married and has no children.  *Id.* ¶ 121.

2.       Educational and Employment History

Defendant attended Midwood High School in Brooklyn, New York for ninth and tenth grades, leaving school after his parents separated.  *Id.* ¶ 131.  In approximately 2018, Defendant attended Campus Magnet Building School in Queens, New York.  The PSR does not indicate whether Defendant graduated from this high school, but does report he earned a High School Equivalency diploma in 2020.  *Id.* ¶¶ 129, 130.

In approximately 2017 or 2018, Defendant worked as an off-the-books temporary laborer in Queens. *Id.* ¶ 134. From approximately 2017 or 2018 through his arrest for the instant extortion offense, Defendant was unemployed. *Id.* ¶ 133; *see also id.* ¶ 132.

### 3. Prior Convictions

Defendant has one prior conviction for Robbery in the Third Degree, for which he was adjudicated a youthful offender and sentenced to a three-year conditional discharge. *Id.* ¶ 107. During this offense, Defendant—a then 17-year-old—stole a tablet from a person in a cab and struck the tablet's owner with a closed fist. *Id.*

### 4. Physical and Mental Health

Defendant suffers from asthma for which he is prescribed an inhaler. *Id.* ¶ 125.

Defendant reportedly received mental health treatment in high school in response to behavioral problems stemming from his eviction and witnessing his father abuse his mother. *Id.* ¶ 126. Defendant reported suffering from anxiety and depression during that time, but was not prescribed medication. *Id.*

Since his incarceration in the instant case, Defendant reported suffering from depression, anxiety, and post-traumatic stress disorder. *Id.* He is currently receiving mental health treatment; is prescribed medication; and requested further mental health counseling. *Id.* Defendant's mental health history, and current mental health status, is discussed in-depth in the forensic psychiatric evaluation attached to defense counsel's sentencing memorandum. Ex. A to Def. Mem., ECF No. 692-1.

### 5. Substance Abuse

Defendant reported prior to his arrest for the instant extortion offense, he smoked marijuana daily. PSR ¶ 127. Defendant reported he does not drink alcohol. *Id.* Defendant has

7

not received substance abuse treatment in the past and is uninterested in receiving drug treatment counseling. *Id.* ¶ 28.

      6.     Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

      **B.**     **The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offenses, which involved participation in four different shootings and extortion accompanied with the threat of physical violence. *See supra* Part I. While Defendant and other individuals connected to GD were purportedly targeting rival gang members, they opened fire into crowds of people, shooting indiscriminately. *Id.* Defendant drove a decoy car in both November 7, 2020 drive-by shootings. Not satisfied with this role, Defendant asked to be in the shooter car in the future. *Id.* Defendant was in the shooter car for both November 9, 2020 shootings, and during the first of those shootings, Defendant was one of two GD members to exit the vehicle and open fire at a group of men. *Id.* Defendant further brandished a gun while extorting a bodega employee. *Id.* The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

## C.    The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available"

for Defendant.  18 U.S.C. § 3553(a)(3).

Defendant was convicted of 10 counts of the Superseding Indictment:  Count 10,

conspiracy to murder rival gang members; Counts 12 and 17, attempted assault with a dangerous

weapon in-aid-of racketeering; Counts 13, 16, and 18, attempted murder in-aid-of racketeering;

Counts 14 and 19, assault with a dangerous weapon in-aid-of racketeering; and Counts 15 and

20, possessing, brandishing, and discharging a firearm during a crime of violence.  *See* Jury

Verdict.  Defendant was also convicted of Count 1 of the 21-CR-166 Indictment, charging him

with threatening physical violence in furtherance of a plan to extort.  *See id.*

For Counts 10, 13, 16, and 18, Defendant faces a maximum term of imprisonment of ten

years and no minimum term of imprisonment on each count.  18 U.S.C. § 1959(a)(5).  Defendant

also faces a maximum term of supervised release of three years.  18 U.S.C. § 3583(b)(2).  If a

condition of release is violated, Defendant may be sentenced to up to two years without credit for

pre-release imprisonment or time previously served on post-release supervision.  18 U.S.C. §

3583(e).

For Counts 12 and 17, Defendant faces a maximum term of imprisonment of three years

and no minimum term of imprisonment on each count.  18 U.S.C. § 1959(a)(6).  Defendant also

faces a maximum term of supervised release of one year.  18 U.S.C. § 3583(b)(3).  If a condition

of release is violated, Defendant may be sentenced to up to one year without credit for pre-

release imprisonment or time previously served on post-release supervision.  18 U.S.C. §

3583(e).

For Counts 14 and 19, Defendant faces a maximum term of imprisonment of 20 years and no minimum term of imprisonment on each count. 18 U.S.C. § 1959(a)(3). Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e).

For Counts 15 and 20, Defendant faces a minimum term of imprisonment of ten years and a maximum of life. 18 U.S.C. § 924(c)(1)(A)(iii); *United States v. Johnson*, 507 F.3d 793, 798-99 (2d Cir. 2007). The terms of imprisonment on each of Counts 15 and 20 must run consecutively to all other counts. 18 U.S.C. § 924(c)(1)(D)(ii). Defendant also faces a maximum of five years supervised release. 18 U.S.C. § 3583(b)(1). If a condition of release is violated, Defendant may be sentenced to up to five years of imprisonment without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e).

For Count 1 of the 21-CR-166 Indictment, Defendant faces a maximum term of imprisonment of 20 years and no minimum term of imprisonment. 18 U.S.C. § 1951(a). Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e).

Defendant is ineligible for probation on all counts. 18 U.S.C. §§ 3561(a)(2), 3561(a)(3), and 924(c)(1)(D)(ii).

In addition to facing terms of imprisonment and supervised release, Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00 on each count pursuant to 18 U.S.C. § 3571(b). However, Defendant's financial profile indicates he is unable

10

to pay a fine. PSR ¶ 138. The Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A). Defendant's counts of conviction are subject to forfeiture allegations. *See* Superseding Indictment ¶¶ 44-45; 21-CR-166 Indictment ¶¶ 3-6. Pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution in this case. However, the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victims and his victims' families. PSR ¶ 166. Per guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense[3]

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guideline for Counts 10, 12, 13, 14, 16, 17, 18, and 19 of the Superseding Indictment is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12. PSR ¶¶ 50-53, 55-58; *see also id.* ¶¶ 66-89. As the underlying crime for each count is attempted murder,[4] the applicable guideline for each count is U.S.S.G. §2A2.1(a)(1), which provides for a

---

[3] Defendant Agoro filed *pro se* letters making a number of legal arguments and objections to the PSR and his Guidelines calculations. *See* ECF Nos. 601, 602, 603, 605, 611, 639, 640, 641, 662. The Court has considered his arguments and finds them to be absolutely without merit.
[4] The Government argues the trial evidence established the first November 7, 2020 shooting was an attempted murder by the preponderance of the evidence, thus warranting the attempted murder cross-reference in relation to

11

base offense level of 33.  Probation, the Government, and defense counsel all agree with this calculation.  *See* PSR ¶¶ 50-53, 55-58; *see also id.* ¶¶ 66-89; Government Memorandum ("Gov't Mem.") at 4-5, ECF No. 728; Def. Mem. at 1-2.

The applicable Guideline for Counts 15 and 20 of the Superseding Indictment is U.S.S.G. §2K2.4, which provides the Guidelines sentence is the statutory mandatory minimum.  U.S.S.G. §2K2.4(b); *see also* PSR ¶¶ 54, 59, 90, 91.  The mandatory minimum for violations of 18 U.S.C. § 924(c)(1)(A)(iii) is ten years, or 120 months.  Pursuant to Note 2(A) to U.S.S.G. §2K2.4, imprisonment imposed for these offenses must run consecutively to any other term of imprisonment.

The applicable Guideline for Count 1 of the 21-CR-166 Indictment is U.S.S.G. §2B3.2, which provides a base offense level of 18.  A two-level enhancement is warranted because the offense involved an express or implied threat of death, bodily injury, or kidnapping.  U.S.S.G §2B3.2(b)(1).  An additional five-level enhancement is warranted because Defendant brandished a firearm during the offense.  U.S.S.G. §2B3.2(b)(3)(A)(iii).  Therefore, the total offense level for Count 1 of the 21-CR-166 Indictment is 25.  Probation, the Government, and defense counsel all agree with this calculation.  *See* PSR ¶¶ 60, 92-94; Gov't Mem. at 5; Def. Mem. at 1-2.

---

Count 12. *See* Government Memorandum ("Gov't Mem.") at 4 n.5, ECF No. 728.  Probation applies the attempted murder cross-reference in its calculations. PSR ¶ 51.  Defense counsel does not object to the PSR Guidelines calculations. Def. Mem. at 1-2.  The Court finds, by a preponderance of the trial evidence, Defendant acted with a specific intent to kill to support applying the attempted murder cross-reference to Count 12.  As described in *supra* Section I, Defendant drove a decoy car in a three-car convoy—so designed to allow the shooters to escape—to rival gang territory.  Surveillance video admitted at trial shows the shooter car pulled up to a car behind which young men were standing and slowed down.  *See* GX 6030, file name 1606275938247_frontporch_avi; Tr. 1066-69.  Once the car slowed down, individuals inside the car opened fire.  *Id.*  The shooter car then sped off, followed by Defendant's decoy car.  *See* GX 6030, file name 1606275938247_frontporch_avi.  This and other evidence presented at trial supporting both the motivations for these shootings and Defendant's participation therein show Defendant acted with a specific intent to kill by a preponderance of the evidence.  Therefore, the Court applies the attempted murder cross-reference to Count 12.  *See also United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005).

Pursuant to the Multiple Count Analysis laid out in U.S.S.G. §3D1.4, the combined offense level is determined by taking the highest offense level of the group and increasing that by a certain number based on how many "units" exist across counts. In this instance, application of the grouping rules under U.S.S.G. §3D1.2 yields five groups: Group 1 – Counts 10 and 12; Group 2 – Counts 13 and 14; Group 3 – Counts 16 and 17; Group 4 – Counts 18 and 19; and Group 5 – Count 1 of the 21-CR-166 Indictment. *See* PSR ¶ 99; *see also id.* ¶¶ 50-53, 55-58. Because Groups 1 through 4 each has an offense level of 33—the highest offense level—each group counts for one unit. U.S.S.G. §3D1.4(a). Because Group 5 has an offense level of 25, which is eight levels below the highest offense level, that group counts for one half-unit.[5] The total number of units is therefore four and one-half, which amounts to four additional levels pursuant to U.S.S.G. §3D1.4. Counts 15 and 20 are not included in the multiple count analysis pursuant to U.S.S.G. §2K2.4(b). This brings the combined adjusted offense level to 37. Probation, the Government, and defense counsel all agree with this calculation. *See* PSR ¶ 99; Gov't Mem. at 5-6; Def. Mem. at 1-2.

Probation calculates Defendant's base criminal history score as one. PSR ¶ 108. Pursuant to the Sentencing Table in Chapter Five, Part A of the Guidelines, a criminal history score of one results in a criminal history category of I. The Government and defense counsel agree with Probation's criminal history calculation. *See* Gov't Mem. at 6; Def. Mem. at 1.

Probation contends an upward departure may be warranted pursuant to Application Note 2 in the Commentary to U.S.S.G. §2A2.1 because Defendant's actions created a substantial risk of death or serious injury to more than one person. PSR ¶ 172. Defense counsel notes a downward departure may be warranted under U.S.S.G. §5K2.0 (Policy Statement), which

---

[5] The Government's calculations assert Group 5 is disregarded. Gov't Mem. at 5. However, any discrepancy is harmless as either 4 or 4.5 units amounts to four additional levels. *See* U.S.S.G. §3D1.4.

provides for downward departures where aggravating or mitigating circumstances exist of a kind
or degree "not adequately taken into consideration by the Sentencing Commission in formulating
the guidelines." *See* Def. Mem. at 6-9.

A total adjusted offense level of 37, combined with a criminal history category of I,
results in a recommended Guidelines range of imprisonment of 210 to 262 months.  PSR ¶ 144;
Gov't Mem. at 6; Def. Mem. at 1-2.  Because an additional 120 months must be added for each
of Counts 15 and 20, which each has mandatory minimums of ten years that must run
consecutively to all other counts, the effective Guidelines range is between 450 and 502 months.
Probation, the Government, and defense counsel all agree with these calculations, which the
Court adopts.  *Id.*

The parties' recommendations as to an appropriate sentence vary.  Probation
recommends:  a sentence of 450 months of imprisonment, the bottom of the Guidelines
sentencing range; three years of supervised release with special conditions; and payment of the
mandatory $1,100.00 special assessment.  Probation Recommendation at 1, ECF No. 590-1.
Probation does not recommend the Court impose a fine, as it does not appear Defendant has the
ability to pay. *See id.* at 3.  Probation recommends Defendant be excused from the mandatory
drug testing provisions during supervised release.  *Id.* at 1-2.  Probation's sentencing
recommendation is predicated on the combination of (1) the extremely serious nature of
Defendant's conduct, (2) Defendant's limited criminal history, and (3) Defendant's youth.  *Id.* at
3.

At sentencing, defense counsel requested a below-Guidelines sentence of 240 months of
imprisonment.  *See also* Def. Mem. at 2 (noting the recommended Guidelines range for the
underlying crimes, i.e. 210-262 months, would achieve the goals of sentencing); *id.* at 3 (noting

the Court can sentence Defendant Agoro to his mandatory 20-year minimum, to run consecutive to a downward departure sentence on the remaining counts). Defense counsel argues the nature and characteristics of Defendant warrant a downward departure under U.S.S.G. §5K2.0, specifically arguing the combination of Defendant's mental health history and difficult childhood, youth at the time of the instant offenses, and Guideline sentencing range's failure to account for the mandatory § 924(c) sentences warrant such a departure. *Id.* at 12-13; *see also id.* at 6-8, 10-12. Indeed, defense counsel cites research regarding the reasons individuals join gangs and the effect of parental incarceration on children as mitigating. *See id.* at 4-6. Defense counsel further notes Defendant's willingness to receive mental health treatment, the limited effect of higher sentences on recidivism, and desire to rehabilitate as warranting a non-Guidelines sentence under § 3553(a)(2)(A). *Id.* at 13-14; *see also id.* at 15.

This Court has read and considered the Forensic Psychiatric Evaluation prepared for Defendant. Ex. A to Def. Mem.[6]

The Government recommends a below-Guidelines sentence of 360 months. Gov't Mem. at 1. Such a sentence is warranted, the Government argues, in light of the extreme seriousness of the instant offense, specifically noting Defendant is "one of only two people directly involved in all four shootings," was "himself was a shooter in two of the four shootings," and "possessed a firearm on at least one other occasion, when he committed the gunpoint extortion of a bodega employee." *Id.* at 6. The Government further argues such a sentence is necessary to effectuate both general and specific deterrence. *Id.* at 6. Finally, the Government argues a "well below Guidelines" sentence of 360 months would account for the history and characteristics of

---

[6] This Evaluation also contains a number of facts about Defendant's background which are either not included in the PSR or are inconsistent with portions of the PSR.

Defendant, specifically Defendant's youth, perpetration of gang violence, and refusal "to accept responsibility or demonstrate remorse, no matter how many opportunities he was given." *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E.    Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Defense counsel points the Court to U.S.S.G. §5H1.3 (Policy Statement), which states "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with the other offender characteristics, are present to an unusual degree and distinguish this case from the typical cases covered by the guidelines." *See* Def. Mem. at 12. As noted above, defense counsel also asks the Court to consider U.S.S.G. §5K2.0 (Policy Statement), as grounds for a downward departure. *See* Def. Mem. at 6-9.

The parties have not drawn the Court's attention to any other applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.    The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court considers defense counsel's concern that those co-defendants who pled guilty will receive a substantially lower sentence than Defendant, who exercised his constitutional right to a trial. Def. Mem. at 2, 14-15. For the reasons stated in this Memorandum and Order, and

16

considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 360 months of imprisonment; three years of supervised release with both the standard and special conditions recommended by Probation in this case; and the mandatory $1,100.00 special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3562(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 590, as corrected herein, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED.

# s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 8, 2024
Brooklyn, New York

**18**